## West Penn Power Company v. Wilson.

*Public service franchises—Telephone lines on towers of electric transmission system—Words and phrases—"Necessary apparatus"—Act of May 21, 1921.*

1. Under the provisions of the Act of May 21, 1921, P. L. 1057, giving to power companies the right to construct and maintain upon their appropriated rights of way necessary "apparatus, . . . equipment and facilities . . . for the transmission or distribution" of electric power, the company has the right to maintain telephone wires on its towers, when it appears that they are used exclusively in connection with and for the purposes of its electric transmission system—to direct and control such transmission and to detect leakage of current—and generally to assist in rendering to the public an uninterrupted and completely efficient service of the kind the company is intended to give.

2. The word "necessary," as used in the act, is not to be restricted to a strict and absolute necessity, but refers to those things the doing or maintaining of which are essential "for the rendition with complete efficiency and with safety of the service which the public has the right to demand" of the company.

Bill in equity for injunction.  C. P. Washington Co., No. 2917.

*Donnan & Miller*, for plaintiff.

*R. W. Knox, A. M. Linn, T. J. Duncan* and *Boyd E. Warne*, for defendant.

BROWNSON, P. J.—When this case was before us upon a demurrer to the bill (see 3 Wash. Co. Repr. 194, 4 D. & C. 325), we held that, upon the basis of the facts averred by the plaintiff, it would have a right to maintain upon its right of way, as a part of its plant and for use exclusively in and for the purposes of its electric transmission system, the telephone wires involved in this controversy. The case now comes again before the court *in banc* upon exceptions to the findings of the trial judge. The findings of fact are fully warranted by the testimony. Among these are findings to the effect that, for the proper and efficient operation of plaintiff's transmission lines, this private telephone line is necessary to be maintained and used for the following purposes: *(a)* For the direction and control of the transmission of electric current over the lines which make up the system, from the several co-operating generating stations which produce the current, in a manner analogous to the direction by a train dispatcher of the movement of trains upon a railroad; *(b)* for the prompt detection and location of faults and defects in the transmission lines in order that they may be remedied before they have developed into troubles which would interrupt the service, the effect of the leakage of current from such a fault being to render the telephone noisy, which indicates the existence of such a fault, and the telephone being then so employed, by a method of manipulation and use for listening, which is described in the testimony, as to make possible the determination, without a shutting off of service, of the approximate location on the system where the fault exists, and the immediate sending of men to that location to remedy the defect; and *(c)* for the controlling and direction of the doing of repair work on the transmission lines·in such a manner as to minimize interference with the service

and the danger of accidents, the presence of the telephone line upon the right of way making it possible for the workman to maintain communication with the office, to receive directions therefrom, and to arrange for shutting off, immediately before he begins his work, of the current carried by the wire he is to work with, and for turning it on again as soon as his work is finished; that while it is not essential, in order to use the telephone for purpose *(a)*, that the telephone wires be carried on the same towers or poles as the transmission wires, this is essential in order that it may be used for purposes *(b)* and *(c)*; and as a conclusion from, and as the result of, all the particular facts stated, it is further found that "it is not practicable to maintain and operate the transmission line of the plaintiff in such a manner as to render to the public practically uninterrupted and completely efficient service, of the kind that this line is intended to give, without the use of a telephone line carried upon the same towers whereon the transmission wires are carried."

After discussing the provisions of the Act of May 21, 1921, P. L. 1057, and the relevant authorities, the trial judge came to the conclusion that the grant made by that statute to such corporations as the plaintiff of authority to construct and maintain upon their appropriated rights of way necessary "apparatus, . . . equipment and facilities . . . for the transmission or distribution" of electric power, was intended to and does authorize the erection of every sort of equipment or apparatus which is requisite for serving the public with complete efficiency, and with safety, and that upon the findings of fact (the most important of which have been very briefly summarized above), this telephone line is an apparatus, equipment or facility of that kind. The principal argument against this conclusion, presented by the defendant, is that the circumstance, brought out in the testimony, that for three or four months previous to the trial, during the pendency of the case (the situation then being that the defendant had cut the telephone wires and had refused to permit plaintiff's men to re-establish them), the transmission wires were in actual use, shows them to be capable of operation without telephone wires. The facts which appear, in connection with the use referred to, are that during the period mentioned, pending the completion of a generating station at Charleroi, which is to be a part of the plaintiff's plant, this portion of the transmission system was put into temporary and partial use for the carrying from Charleroi to Washington of current having about one-fourth the volume and one-half the voltage of what is to be the permanent load when that station is completed. This argument is based upon the assumption that the word "necessary" in the statute refers to a strict and absolute necessity; that is to say, defendant claims that if electric current, to be used for power purposes, can be transmitted at all upon wires which are not accompanied by a telephone circuit, the latter cannot be regarded as a necessity. But we think this word should be interpreted in the light of the object aimed at by the legislature when it granted the right of eminent domain, viz., to make it possible that the public may be efficiently served, and of the principle that "when the purpose of the franchise is the performance of a public act, the grant is to be interpreted so as to enable the act to be done:" Monongahela Bridge Co. *v.* Kirk, 46 Pa. 112, 129. And it having been found that the maintenance of such a telephone circuit is essential for the rendition with complete efficiency, and with safety, of the service which the public has the right to demand of the plaintiff, we regard such telephone wires as being necessary equipment within the meaning of the Act of 1921. In discussing the argument, the trial judge made the following remarks: "*(a)* The reason why the plaintiff did not during the period referred to make use of or maintain the telephone wires was

that the defendant had interfered with such maintenance; *(b)* the use made of the transmission wires during that time was not the full use that is to be given to them when plaintiff's plant is fully completed (see finding of fact No. 12), and when it is so completed and the full load is placed on these transmission wires, the likelihood of the occurrence of troubles on the line, for the detection and locating of which, and in connection with the remedying whereof, the telephone lines are to be used, will be immensely increased; and *(c)* this line is newly built and its liability to get out of order, to the interruption of service, is not at the start what it will be later, as obviously such liability would increase progressively with the passage of time. In the partial use which has been made of the line without the telephone wires, plaintiff has taken the risk of the occurrence of troubles which it would not be able to detect and remedy promptly; but it ought not to take such risk after the line is put in full operation, because it owes to the public and its employees the duty of taking all necessary and practicable precautions to guard against interruptions of service and injuries from accidents in the course of its operations. We do not regard the circumstance that the line has been partially operated heretofore, in the manner indicated, as derogating from the claim of plaintiff that telephone wires on its towers are necessary to enable it to perform its full duty to the public by maintaining uninterrupted service after the line is put in full operation."

We see no reason for disturbing the adjudication. My colleague concurs in these views.

And now, April 28, 1924, after argument and due consideration, the exceptions to the trial judge's findings of fact and of law are overruled and dismissed, and counsel are directed to prepare and submit a form of final decree.

From E. E. Crumrine, Washington, Pa.